OPINION OF THE COURT Ralph A. Fabrizio, J. The issue before the court is whether the defendant’s application, made pursuant to the Civil Practice Law and Rules, seeking an “access order” in which the court would direct private individuals to open their home to defense attorneys and investigators to have it photographed and measured, is statutorily and/or constitutionally mandated. The home was the scene of several sex offenses alleged to have occurred five years ago. The current residents of the home have no relation to the crime, and have refused requests from the defendant to allow his attorneys into their home. The court denies the application. Defendant stands indicted for, inter alia, predatory sexual assault against a child (Penal Law § 130.96). The allegations are that defendant, on three separate occasions in 2012, sexually assaulted a child, his then 10-year-old stepdaughter, inside the residence defendant shared at the time with the child’s mother and the child at 453 East 185th Street in Bronx County. The alleged crimes were not reported immediately, and defendant was not indicted until October 2015. In the years between the crimes alleged and the bringing of criminal charges, the defendant, the complaining witness and her mother all moved from the residence. The home is now occupied by individuals who have no relation to the case. It is not known when they moved in, or whether other individuals might have also lived there after the defendant moved out. On May 22, 2017, defense investigators went to the residence and attempted to gain access to take photographs and measurements inside this private home. The current residents did not allow them to enter their home. On August 18, 2017, defense counsel emailed a request to the court, copying the People. Counsel stated that she “would like to seek an access order to view and photograph the location of the crime, which is a private residence and occupied by individuals not related to the case.” The People responded to counsel’s email on August 21, 2017, stating, “In regard to the request to go to the residence, I would only ask that the People be given the opportunity to go there at the same time so as not to inconvenience the residents unnecessarily on multiple occasions.” The court told the parties it would hear the application on the next court date, which was scheduled for September 26, 2017. On Wednesday, September 20, 2017, defendant served the People with a notice of motion, made pursuant to CPLR 3120 (1) (ii), seeking a court order to allow him access to the private residence for the purpose of photographing and measuring the rooms inside the home. The motion was made returnable six days later, on September 26, 2017. The motion is also noticed to the person defendant believes is the current owner/occupant of the private residence. A defense investigator went to the residence on three occasions to “serve” motion papers on these private individuals. The investigator filed three affidavits with the court: two are called affidavits of “attempted service,” and the third is an affidavit of “service.” According to the affidavits, the investigator first went to the residence on September 19, 2017 at 11:10 a.m. The investigator states he rang the doorbell four times, and waited 10 minutes. Nobody answered. In a second affidavit, the same investigator states he went back to the residence at 2:30 p.m. that same day. Once again, he rang the doorbell four times, and waited 10 minutes. Nobody answered. A different investigator returned the next day, September 20, 2017, at about 5:30 p.m. This investigator rang the bell. The person who answered the door was not the current owner/occupant of the private home. That individual told the investigator the person he was looking for was not at home. The investigator states that the individual he spoke with “accepted the documents on behalf of” the named owner. The person who accepted the papers is described, inter alia, as a man who “is in his mid-40s.” On September 26, 2017, the case was called into the record. Defendant made reference to the written motion seeking an access order. As it turned out, the motion had been filed with the court clerk on September 20, 2017, at 2:30 p.m., hours before it was left with the person named in the affidavit of service at the private home. Since it had not been served on the People eight days in advance, and it was filed too close to the return date, the application did not appear on the court’s motion calendar. The motion papers were not before the court. During the calendar call, the prosecutor said the current resident and his wife were in the audience. The prosecutor explained that the resident telephoned her after he received the motion papers, because the prosecutor’s name was on the notice of motion. The resident asked the prosecutor, inter alia, whether he had to come to court on September 26, 2017. She told the individual she was unable to give him legal advice. The prosecutor and defense attorney said they spoke with the resident that day and he said he did not want to give either side permission to enter his home. The court expressed concern about its legal authority to order these residents, with no connection to the matter, to allow the defense investigators, attorneys and the prosecutor into their residence. Defendant argued, inter alia, that the authority came from the CPLR, case law, and the Constitution. These same grounds are stated in the motion papers. The court directed the People to file a written response to the motion. The individuals in the audience were not asked to speak, on or off the record. The People filed an affirmation in opposition to the motion. They have also annexed a copy of the blueprints on record with the New York City Department of Buildings. The blueprints show the configuration and measurements of each of the rooms at the residence. The motion for access to independently photograph and measure the rooms is denied for a number of reasons. First, contrary to the defendant’s argument, the CPLR provides no legal authority for this court in this criminal matter to grant this application. The legislature has mandated that the CPLR only “shall govern the procedure in civil judicial proceedings . . . except where the procedure is regulated by inconsistent statute.” (CPLR 101.) “A ‘civil judicial proceeding’ is a prosecution, other than a criminal action, of an independent application to a court for relief.” (CPLR 105 [d].) In certain instances, the legislature has specifically made narrow parts of the CPLR applicable to criminal actions through specific statutes in the Criminal Procedure Law. For example, the rules of evidence contained in article 31 of the CPLR, which are substantive in nature, are made applicable to criminal cases by statute. (CPL 60.10.) Several other sections of the CPL incorporate rules and statutes in the CPLR by reference. (See CPL 610.20 [3].) Other than those limited situations, “the CPLR has no application to criminal actions and proceedings.” (People v Silva, 122 AD2d 750, 750 [1st Dept 1986]; see People v Elmer, 19 NY3d 501, 508 n 2 [2012] [recognizing that CPLR’s requirement that an appeal could only be taken from a “written order” not relevant in a criminal appeal].) Although the evidence rules are contained in the same CPLR article as the statute defendant relies on in his motion, no other rule or statute contained in article 31 is incorporated by reference by any part of the CPL. The reason for that is readily apparent. Article 31 contains the laws and rules applicable to “disclosure” in civil cases. Except for the substantive rules of evidence, the disclosure rules and statutes in article 31 have no relevance to a criminal case. For example, attorneys in a criminal case are not entitled to petition a court for “supervision of disclosure” by a “referee.” (CPLR 3104.) A party in a criminal case has no right to depose another party. (CPLR 3106, 3113, 3114, 3116, 3117.) There are no interrogatories in a criminal case. (CPLR 3130.) CPLR 3120 is entitled “Discovery and production of documents and things for inspection, testing, copying or photographing.” CPLR 3120 (1) (ii) specifically provides that “[a]fter commencement of an action, any party may serve on any other party a notice or on any other person a subpoena duces tecum . . . “to permit entry upon designated land or other property in the possession, custody or control of the party or person served for the purpose of inspecting, measuring, . . . [or] photographing . . . the property.” Defendant argues that the individuals currently living in the residence are “third parties” in this criminal action, and that they are therefore subject to being served with only a notice of motion. That is simply not the case. There are only two parties in a criminal case: the People and the accused defendant. (See CPL 240.10 [4].) Witnesses are not third parties. No private citizen should be made to feel compelled to come to court in a criminal case merely because an attorney served them with a notice of motion advising them they could be the subject of a court order seeking relief that impacts that individual’s privacy interests.[1] Defendant also refers to his application under the CPLR as a “discovery” motion. CPLR discovery rules are wholly inapplicable to discovery in a criminal case. The CPL contains statutes the legislature enacted to be applied “exclusively” in criminal cases. (CPL 1.10 [1] [a].) Simply put, a criminal defendant’s right to discovery is specifically delineated by the rules in the CPL, and not the CPLR. The right to pretrial discovery in a criminal case is purely a creature of statute, and the legislature has drafted statutes it determined to be necessary and placed them in CPL article 240. These are the only statutes that define the scope and timing of discovery in criminal matters. (See People v DaGata, 86 NY2d 40, 44 [1995]; People v Thompson, 92 AD3d 1139, 1140 [3d Dept 2012]; Matter of Constantine v Leto, 157 AD2d 376, 378 [3d Dept1990], affd 77 NY2d 975 [1991].) These statutes are the only valid and legal way of obtaining discovery, including reciprocal discovery, in a criminal case, because there is no general constitutional right to obtain discovery in a criminal case. (See Matter of Miller v Schwartz, 72 NY2d 869 [1988].) “A criminal defendant may not circumvent the statutes delineating his or her limited right to discovery.” (Matter of Brown v Grosso, 285 AD2d 642, 644 [2001].) Moreover, a court has no right to compel the production of evidence which is not authorized to be disclosed by the CPL. (See Matter of Johnson v Sackett, 109 AD3d 427, 431 [1st Dept 2013].)[2] In terming this a “discovery” motion under the CPLR, the defendant is circumventing the very statutes that codify his right to obtain discovery in this criminal case. Applications to compel discovery in a criminal case authorized under the CPL are governed exclusively by CPL 240.90, which states that a motion by a defendant to compel discovery “shall be made as prescribed in [CPL] 255.20” (CPL 240.90 [2]). Thus, this type of motion, like any pretrial motion in a criminal case, must be made “within forty-five days after arraignment and before commencement of trial.” (CPL 255.20 [1].) A court is required to entertain a motion filed after expiration of the 45 day period, “based upon grounds of which the defendant could not, with due diligence, have been previously aware.” (CPL 255.20 [3].) These are the exclusive ways a defendant may seek court ordered discovery in a criminal case. Thus, if this application were made under the CPL, it would be untimely. Even if it had been made two years ago, however, the defendant would not be entitled to the relief requested as an item of “discovery.” Article 240 of the CPL provides no statutory authority for a court to “compel” private citizens to open their homes to an attorney for a defendant, or to a prosecutor, for the purpose of taking photographs and measuring their rooms. Ironically, if the People were seeking access to a location that had been a “crime scene” several years earlier, for the purpose of gathering evidence or for discovery, they would have to apply for a search warrant. (Flippo v West Virginia, 528 US 11 [1999]; People v Cohen, 87 AD2d 77, 83 [2d Dept 1982], affd 58 NY2d 844 [1983].) The defendant is also incorrect in his assertion that he would be deprived of his right to “compulsory process” if the court denies this application. The right to “compulsory process” is meant specifically to address a defendant’s right to call a witness to present evidence at a trial; it does not create an independent constitutional right to discovery. The Compulsory Process Clause of the 6th Amendment is applicable to a proceeding where the defendant has an absolute right to call a witness, which is most often at a trial. Thus, it has no applicability to pretrial proceedings, such as a grand jury. (See CPL 610.20 [3]; 190.50 [6].) In this case, the defendant can exercise this right in a very simple way; he can issue a trial subpoena to compel the residents of the home to come to court and describe the dimensions and configurations of the rooms, assuming that they still appear the same in those aspects as they did in 2012. The legislature provided for a mechanism for defendants to compel witnesses to testify in criminal cases and allows for them to issue trial subpoenas in accordance with these rules. A criminal defendant’s authority to issue trial subpoenas is governed specifically by CPL article 610. CPL 610.20 (3) provides that attorneys for defendants may issue trial subpoenas “subscribed by [themselves] for the attendance in . . . court of any witness whom the defendant is entitled to call in such action or proceeding.” Only where the subpoena is directed to “any department, bureau or agency of the state or of a political subdivision thereof” must the criminal defense attorney seek a court order. (Id.) In that situation, the defense subpoena must be “issued . . . pursuant to the rules applicable to civil cases as provided in” CPLR 2307, yet another statute in the CPL that specifically references a rule in the CPLR. The CPLR subpoena rules referenced in this section of the CPL require notice be given to the entity being subpoenaed and to the People, and are therefore procedural in nature, and not substantive. While CPLR 3120 (1) (ii) also authorizes a subpoena to be served to obtain the type of discovery defendant seeks in this application, the CPL does not reference that section at all in its subpoena statutes. There is no authority in the CPL to use a subpoena, including a subpoena duces tecum, as a discovery device; in fact, judges who have issued subpoenas for purposes of discovery, including during pretrial and pre-indictment stages of a criminal case, have been routinely and consistently found to have acted outside the scope of their authority. (See e.g. Matter of Miller v Schwartz, 72 NY2d at 870; Matter of Hoovler v DeRosa, 143 AD3d 897 [2d Dept 2016]; Matter of Phillips v Ramsey, 42 AD3d 456, 458-459 [2d Dept 2007]; Matter of Brown v Grosso, 285 AD2d at 644; Matter of Brown v Appelman, 241 AD2d 279, 283-284 [2d Dept 1998].) Most relevant here, a trial judge has been found to have acted outside of his statutory and constitutional authority in ordering that a criminal defendant be allowed to enter and photograph the interior areas of the apartment of the crime victim, which was the scene of that crime. (Matter of Kaplan v Tomei, 224 AD2d 530 [2d Dept 1996].) Nonetheless, the defendant argues that he also has a separate constitutional right to inspect, photograph and measure these premises, and that right outweighs any constitutional privacy interest to which the current residents are entitled. The court rejects that argument as well. This is a discovery application, plain and simple. “Discovery which is unavailable pursuant to statute may not be ordered based on principles of due process.” (Matter of Pirro v LaCava, 230 AD2d 909, 910 [2d Dept 1996]; see also Matter of Brown v Appelman, 241 AD2d at 284-285 [denying pre-indictment request by defendant to photograph the crime scene at which a murder occurred in a case in which the death penalty was available]; Matter of Kaplan v Tomei, 224 AD2d at 530.) Defendant tries to bootstrap this very clear rule by alleging, in the most con-clusory of terms, that the measurements of the rooms where the crimes are alleged to have occurred will give him a “complete defense” to the charges. As far as any right to discovery that may involve a constitutional matter, CPL 240.20 (1) (h) provides that the People must disclose “[a]nything required to be disclosed . . . pursuant to the constitution of this state or of the United States.” To the extent that the measurements of the rooms are an important element of the defense, the People have complied with their own discovery requirement by providing him with the blueprints. It is not clear why the defendant would even need to obtain information about how the rooms looked and measured at the time of the crimes. Defendant is aware, and has been aware since the inception of the case, that the purported victim “alleges the underlying acts occurred on three occasions both inside her bedroom and Mr. Vega’s bedroom located at the crime scene.” The defendant is not alleged to be a stranger who broke into the residence for a brief period and committed a crime while inside. He actually lived in this very residence for a long time. He understands that some of the criminal acts alleged occurred in his own bedroom, while others are alleged to have occurred in his stepdaughter’s separate bedroom. Thus, defense “counsel is in a unique position in this case, because . . . defendant lived” at the residence before, during, and after the crimes he is alleged to have committed there. (People v Nicholas, 157 Misc 2d 947, 951 [Sup Ct, Bronx County 1993].) Since “defendant in this case could establish” the layout of the residence “based on the information he already has” (Matter of Johnson v Sackett, 109 AD3d at 430), there is no reason to order any further discovery about how the apartment is configured. For the foregoing reasons, the defendant’s application is denied in its entirety. . The “affidavits of service” provided with the motion papers would not even correspond to any legally recognized method of service. It appears that defendant has tried to comply with CPLR 308 (2). That statute provides that personal service can be accomplished by leaving a “summons” with a person of suitable age and discretion at that individual’s dwelling, and then mailing the “summons” to the person attempted to be served at their last known residence or place of business. Of course, what was served was not a “summons,” a legal notice that if properly served would give the court jurisdiction over a person. Moreover, there is no affidavit of service indicating that the notice of motion was ever mailed. The defendant did not serve a subpoena; if he had, he would have had to comply with the same rules to make the service legal. (CPLR 2303.) . Defendant cites two lower court decisions in which trial judges used CPLR 3120 (1) (ii) to justify granting defense applications or prospective defense applications seeking to order private individuals to admit attorneys and investigators into their private homes. (See People v Davis, 169 Misc 2d 977 [Westchester County Ct 1996]; People v Legrande, 182 Misc 2d 375 [Sullivan County Ct 1999].) The court is persuaded by the overwhelming weight of appellate authority to the contrary and respectfully declines to adopt the reasoning of those judges.